

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-13-00609-CV

Herlinda **ARNOLD**,
Appellant

v.

**WORLDWIDE CLINICAL TRIALS** a/k/a WCT Corporation,
Appellee

From the County Court at Law No. 10, Bexar County, Texas
Trial Court No. 381779
Honorable Jason Pulliam, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice
Dissenting Opinion by:  Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
            Marialyn Barnard, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  August 13, 2014

As noted by the majority, Arnold contends her initial attempt to serve WCT through CT Corp. was effective service because she served WCT's registered agent using WCT's assumed name — "Worldwide Clinical Trials."  I agree Rule 28 of the Texas Rules of Civil Procedure allows Arnold to *sue* WCT in its assumed name.  *See* TEX. R. CIV. P. 28.  However, I do not agree with the majority's conclusion that Rule 28, by extension, imposes a duty on a registered agent to know its clients' assumed or common names or accept service in those names.  *See id.* Accordingly, I respectfully dissent.  Further, having also examined Arnold's second appellate issue and finding it without merit, I would affirm the trial court's judgment.

## *Rule 28*

Rule 28 of the Texas Rules of Civil Procedure provides: "[a]ny partnership, unincorporated association, private corporation, or individual doing business under an assumed name may *sue or be sued* in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right." TEX. R. CIV. P. 28 (emphasis added). However, Rule 28 is silent as to whether a registered agent has a duty to accept service for a represented entity under the entity's assumed or common name — or even know that name. Despite this silence, the majority concludes that "[b]ecause the law permits WCT to be sued in its assumed name, CT Corp. could be served with process using WCT's assumed name, and the record reflects that service was effected on CT Corp., and thereby on WCT, on November 26, 2012, prior to the expiration of the limitations period." Majority Op. at _____.

To support its conclusion, the majority cites to authority for the proposition that "service effected on a registered agent within the scope of its agency is imputed to the litigant." *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 274 (Tex. 2012). The majority believes CT Corp. had a duty within the scope of its agency relationship with WCT to know and accept service for WCT under its common or assumed names. I disagree.

The Texas Business Organizations Code makes it clear the *only* duties of a registered agent are to:

> (1) receive or accept, and forward to the represented entity at the address most recently provided to the registered agent by the represented entity, or otherwise notify the represented entity at that address regarding, any process, notice, or demand that is served on or received by the registered agent; and

> (2) provide the notices required or permitted by law to be given to the represented entity to the address most recently provided to the registered agent by the represented entity.

TEX. BUS. ORGS. CODE ANN. § 5.206(a)(1)–(2) (West 2013) (emphasis added). Nowhere in section 5.206 is the registered agent required to know the assumed or common names of its represented entities. *See id.* Despite Arnold's argument that "it seems reasonable for a registered agent to be required to contact its own represented parties to discern which, if any, of those entities use the assumed or common name indicated on the notice or citation," such a duty is not apparent from the face of section 5.206.

When construing a statute, we presume every word excluded from a statute is excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 636, 540 (Tex. 1981); *Hardy v. Matter*, 350 S.W.3d 329, 335 (Tex. App.—San Antonio 2011, pet. dism'd). "Only when it is necessary to give effect to the *clear legislative intent* can we insert additional words or requirements into a statutory provision." *Cameron*, 618 S.W.2d at 540 (emphasis added); *see Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). The legislative intent as to the duties imposed on a registered agent is clear from the plain language of section 5.206 — the legislature intended to impose only certain duties on a registered agent, and those duties do not include knowing the common or assumed names of represented entities or accepting service in a represented entity's common or assumed name. *See* TEX. BUS. ORGS. CODE ANN. § 5.206(a). Because a registered agent does not have a statutory duty to know the assumed or common names of its represented entities, it likewise cannot have a duty to accept service attempted under those assumed names. *See id*. Therefore, the majority's conclusion that "CT. Corp. had the duty to receive or accept and forward the process or lawsuit to WCT" is unsupported as CT Corp. could not accept and forward process to WCT when it had no duty to know, and the record reflects in fact did not know, who Arnold was attempting to serve. *See* Majority Op. at _____.

The consequences of the majority's decision create a troubling world for registered agents because it places a duty on registered agents to know each and every assumed name of their represented entities to avoid running afoul of the requirements of the agency relationship. Aside from the obvious burden of knowing *each* and *every* assumed or common name of their represented entities, a registered agent will also have to cope with the practical consequences of representing multiple entities with the same assumed or common name.

For instance, a plaintiff could, under Rule 28, name "Delta" as a defendant and attempt service on a registered agent that represents: Delta Airlines, Delta Faucets, Delta Dental, Delta College, Delta Marine, Delta Power Equipment, Delta Waterfowl Foundation, Delta Consolidated Industries, Delta Institute, or Delta Children. What mechanism exists to address this situation if, after doing its due diligence, the registered agent is unsure which "Delta" the plaintiff meant to sue? According to the majority, it would not be sufficient to advise the plaintiff that the agent represents one or more entities with that common name. What happens if a plaintiff is attempting to sue a single franchise of a larger corporation that allows thousands of individual operators to work under the same assumed name, e.g. McDonald's and one of its over 3,000 U.S. franchises?[1] How is a registered agent that represents possibly hundreds or thousands of McDonald's franchises supposed to know which one the plaintiff meant by the assumed name of "McDonald's"? The answer is simple, the registered agent has no duty to know such things. *See* TEX. BUS. ORGS. CODE ANN. § 5.206(a)(1)–(2). Accordingly, the registered agent cannot be expected to accept service under the assumed name of one of its represented entities. *See* TEX. R. CIV. P. 28.

I recognize the court has also cited other authority to support its holding. *See* Majority Op. at _____. However, each of those cases is distinguishable. In neither *Cummings*, *Chilkewitz*, nor

---

[1] Data re: McDonald's U.S. Franchising, http://www.aboutmcdonalds.com/mcd/franchising/us_franchising.html (last visited Jul. 30, 2014).

*Northwest Sign Co.* did the registered agent refuse service due to confusion with whom the plaintiff intended to sue using an assumed name. *See Cummings*, 799 S.W.2d at 407; *Chilkewitz*, 22 S.W.3d at 830; *Nw. Sign Co.*, 680 S.W.2d at 809. Accordingly, none of these cases are relevant to the current facts surrounding Arnold's attempted service with CT Corp., and none of these cases address my concerns with the majority's holding. For the reasons set forth above, I would hold Arnold did not serve WCT in a timely manner.

### *Due Diligence*

Because I disagree with the majority's conclusion with regard to service under Rule 28, I must consider whether Arnold diligently accomplished service on WCT after the limitations period expired. If so, the judgment should be reversed, albeit for a reason different than that relied upon by the majority.

In the event service is diligently accomplished after a limitations period has expired, the date of service relates back to the date of filing the suit. *See Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007). The plaintiff bears the burden of presenting evidence regarding the efforts that were made to serve the defendant and must explain every lapse in effort or period of delay. *Id.* at 216. This court assesses diligence by determining "whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstance and was diligent up until the time the defendant was served." *Id.* In order to make this factual determination, this court examines the time it took to secure service and the effort or lack thereof expended by the plaintiff in procuring service. *See id.* In some instances, a plaintiff's explanation of its efforts to serve the defendant may demonstrate a lack of due diligence as a matter of law, such as when one or more lapses between service efforts are patently unreasonable or unexplained. *See id.*

Here, it is undisputed that Arnold's sixty-day window to bring suit against WCT closed in mid-December 2012, and service through the Texas Secretary of State was accomplished in early March, 2013. After what I consider Arnold's first failed attempt at service on November 26, 2012, she made two other efforts at service: (1) she attempted to serve WCT's registered agent on January 10, 2013, and (2) she sent service through the Texas Secretary of State on February 27, 2013. Between service attempts, Arnold attests she attempted to discover WCT's correct legal name by searching: LexisNexis, the Texas Secretary of State's website, and WCT's own website. However, my review of the summary judgment evidence reveals Arnold's lapses between her efforts to serve WCT were patently unreasonable. Specifically, Arnold's attempt at service on January 10, 2013, was unreasonable; therefore, an unjustified lapse between service efforts exists in the over two month span of mid-December 2012 and February 27, 2013.

On January 10, 2013, Arnold informed CT Corp. that she specifically intended to serve a party known as "**WORLDWIDE CLINICAL TRIALS, INC.**" Arnold affirmed she had researched LexisNexis to determine the proper name of WCT for purposes of service. However, Arnold's own summary judgment evidence, consisting of a copy of a LexisNexis search of the corporate filings under the name "Worldwide Clinical Trial" in the state of Texas, reveals that the specific entity she wished to serve had a status listed as both "inactive" and "terminated." I would hold it is patently unreasonable to attempt to serve an entity that one knows or should have known is "inactive" and "terminated" in the state of Texas. Accordingly, there is no summary judgment evidence to explain the two month lapse in Arnold's reasonable efforts at serving WCT between the limitations deadline of mid-December and February 27, 2013. Therefore, I would reject Arnold's argument and hold she did not meet her burden to show she diligently accomplished

service on WCT after the expiration of the sixty-day window to bring a civil action against WCT

under section 21.254.  *See Proulx*, 235 S.W.3d at 215; *See* TEX. LAB. CODE ANN. § 21.254.

Arnold, however, contends her efforts were analogous to those found diligent by the Sixth

Court of Appeals in *Sibley v. Kaiser Found. Health Plan of Texas.  See* 998 S.W.2d 399, 405–06

(Tex. App.—Texarkana 1999, no pet.).  In *Sibley*, as here, the plaintiff made multiple attempts at

personal service through a registered agent that were refused by the registered agent because it did

not know to which version of the represented entity the documents should be provided.  *Id.* at 405.

Two months after attempted service failed, the plaintiff in *Sibley* received permission to utilize

substituted service and completed service via that method.  *Id.* at 406.  After considering the efforts

of the plaintiff, the Sixth Court of Appeals noted:

> It is clear that Sibley took reasonable and timely steps to attempt to obtain service.
> It is equally clear that any confusion was caused by [the defendant's] use of
> multiple names for its various organizations and the apparent inability of its
> registered agent to provide information that would permit a party to pinpoint the
> actual name of its opponent.  In such a situation, it would be unfair to penalize
> Sibley. . .

*Id. Sibley* is distinguishable from the present case.  Unlike *Sibley*, the record in this case reflects

Arnold did not take reasonable steps to serve WCT through its registered agent.  Specifically, as

discussed above, Arnold undertook the patently unreasonable step of attempting to serve an entity

she knew or should have known was both "inactive" and "terminated."

Moreover, I disagree with a portion of the court's reasoning in *Sibley*.  In that case, the

court seemed to criticize and take into account "the apparent inability of [the] registered agent to

provide information that would permit a party to pinpoint the actual name of its opponent."  *Id.*

However, as discussed above, I would hold a registered agent has no duty to know the assumed or

common names of its represented entities under a plain reading of section 5.206, and I would

acknowledge the statute likewise does not create a duty to provide an aspiring plaintiff information

to facilitate service. *See* TEX. BUS. ORGS. CODE ANN. § 5.206(a). Accordingly, I would decline to follow *Sibley* or reach a similar result regarding Arnold's diligence.

## CONCLUSION

Because I believe the majority erred by interpreting Rule 28 in such a way as to impose new burdens on registered agents. Given the foregoing belief, I contend the majority's decision to hold Arnold's November 26, 2012 attempted service on WCT effective and timely was also erroneous. It follows that the majority should have addressed Arnold's second issue regarding due diligence and find it without merit. In sum, because I believe Arnold's attempted service was not effective and she did not exercise due diligence in serving WCT, I would overrule her issues and affirm the trial court's judgment.


                                                    Marialyn Barnard, Justice